UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM WARD, INDIVIDUALLY AND
FOR OTHERS SIMILARLY SITUATED

    Plaintiffs,

    v.

GUIDANT GLOBAL INC. D/B/A BARTECH
GROUP INC., ET AL.,

    Defendants.

_____ /

Case No. 20-cv-10283

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED MOTION TO CERTIFY CLASS AND AUTHORIZE NOTICE (ECF NO. 42)

### I. INTRODUCTION

On February 4, 2020, Plaintiff William Ward filed the instant collective action under the Fair Labor Standards Act ("FLSA") for unpaid overtime against Defendant Guidant Global Inc. d/b/a Bartech Group Inc. ("Guidant") ECF No. 1. He subsequently amended his Complaint to add as a Defendant Corporate Employment Resources d/b/a Bartech Staffing ("Bartech Staffing"). ECF No. 24.[1]

Presently before the Court is Plaintiff's Renewed Motion to Certify Class and Authorize Notice (ECF No. 42), filed on June 23, 2021. The Motion is fully briefed,

_____

[1] The Defendants are hereinafter collectively referred to as "Bartech."

and the Court held a hearing on the matter on December 7, 2021.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.

## II.   BACKGROUND

### A. Factual Background

Defendant Bartech Staffing, a staffing agency, employed Plaintiff William Ward as a temporary worker.  ECF No. 44, PageID.1715.  Bartech Staffing placed Plaintiff with a client, NextEra Energy, Inc. ("NextEra"), using a managed services provider ("MSP") named Allegis Global Solutions.  *Id*.  Defendants assert Defendant Guidant, also an MSP, "has no involvement with Ward, NextEra, or Bartech[] [S]taffing['s] business."  *Id*.

Plaintiff worked in Nebraska as a Construction Manager.  *Id*.  His assignment at NextEra began on or about May 13, 2017 and concluded on December 3, 2017.  *Id.* at PageID.1716.  Per his offer letter, Plaintiff's "starting hourly wage [was] $67.00."  ECF No. 42-6, PageID.1702.  Both NextEra and Bartech Staffing consider the Construction Manager position exempt from overtime payments under the FLSA.  ECF No. 44 at PageID.1715-16.  Thus, defendants concede that "[t]hroughout his assignment, Ward was paid $67/hour, including any hours worked over 40 in a given week."  *Id*.

2

At NextEra's behest, Bartech Staffing developed the "straight time for overtime" practice for Construction Manager positions approximately 15 years ago. *Id.* at PageID.1716-17. Pursuant to this practice, Bartech Staffing asserts that it guarantees it will adjust up to eight hours the time sheet of any employee who does not work a full day or make up the time later in the week. *Id.* at PageID.1720. However, if the employee choses to take an entire day off, he or she is not compensated for that day. *Id.* at PageID.1721. In this way, according to Defendants, Bartech Staffing "guarantees employees pay for 40 hours of work per week." *Id.* at PageID.1719. In contrast, Plaintiff alleges he and the employees subject to this practice were only paid for the number of hours worked when they worked fewer than 40 hours in a week. ECF No. 42, PageID.420.

## B. Procedural Background

Plaintiff brings this action on behalf of himself and other similarly situated workers who were paid pursuant to Bartech's "straight time for overtime" practice. ECF No. 24, PageID.318. He alleges Bartech staffs the Putative Class Members with its clients in the renewable energy, engineering, information technology, and manufacturing sectors and pays them on an hourly basis with no overtime compensation. *Id.* at PageID.319-20. Ward claims Bartech's failure to pay overtime to the Putative Class Members "was, and is, a willful violation of the

FLSA." *Id.* at PageID.322.  He seeks to recover unpaid overtime and other

damages due to him and the Putative Class Members.  *Id.* at PageID.326.

On April 23, 2021, the Court denied Plaintiff's motion for conditional

certification of a class defined as: "All hourly Bartech employees who were paid

straight time for overtime at any time during the past 3 years (the 'Straight Time

Employees')."  *See* ECF No. 40.  In its Opinion and Order, the Court expressed its

concern that Plaintiff had not presented sufficient evidence to show he is similarly

situated to the Putative Class Members.  *Id.*  Specifically, the Court determined

"Plaintiff's sole declaration [wa]s insufficient to justify conditional class

certification even under the lenient standard that applies at this notice stage."  *Id.* at

PageID.394.  The Court otherwise found Plaintiff's paystubs "demonstrate[d]

Bartech's straight time for overtime pay practice," but that this was insufficient to

overcome the sparsity of evidence that other workers were also subjected to the

policy.  *Id.* at PageID.397-98.  Because the Court does not decide substantive

issues on the merits at the initial notice stage, the Court also declined to resolve the

parties' dispute over whether Plaintiff was subject to an administrative exemption

under the FLSA and not similarly situated to the putative class of Straight Time

Employees.  *Id.* at PageID.390 (citing *Wlotkowski v. Mich. Bell. Tel. Co.*, 267

F.R.D. 213, 217 (E.D. Mich. 2010); *Smith v. Guidant Glob. Inc.*, No. 19-cv-12318,

2020 WL 4883900, at *4 (E.D. Mich. Aug. 20, 2020)).

In the instant Renewed Motion to Certify Class and Authorize Notice, Plaintiff asks the Court to authorize notice to: "All current and former Bartech employees who were paid straight time for overtime at any time during the past 3 years (the 'Straight Time Employees')." ECF No. 42, PageID.403. He asserts that additional discovery in this case demonstrates the Straight Time Employees are similarly situated. *Id.* at PageID.417, PageID.431-33. Specifically, Plaintiff submits records he received in discovery that identify 324[2] employees subject to the straight time for overtime pay policy and a sampling of their timesheets. *Id.* He also relies on the depositions of Maria Nazario (Bartech Staffing Recruiting Coordinator) and Jim Lipscomb (Bartech Staffing's Major Account Manager for NextEra), who confirmed employees other than Plaintiff were subject to the straight time for overtime practice. *Id.* at PageID.418, PageID.422. Plaintiff further supports his Motion with his offer letter and his own timesheets. He also reincorporates the exhibits form his first Motion: his declaration and pay stubs as well as the Contingent Workforce Program Training from the location at which Plaintiff was stationed.

Plaintiff renews many of the certification arguments he raised in his initial Motion. First, he contends Bartech employed Plaintiff and the Straight Time

---

[2] Plaintiff presents this as a list of 363 employees; however, the Court counts 324 and will use that number instead.

Employees on an hourly basis and did not pay them overtime when they worked more than 40 hours in a week. *Id.* at PageID.418-21. Second, Plaintiff argues "whether [Ward] and the [Straight Time Employees] worked in the same job position, at the same locations, were sourced to the same customers, or by the same staffing companies, has no bearing on whether they are 'similarly situated' with respect to the challenged [straight time for overtime] policy." *Id.* at PageId.426-27 (quoting *Smith*, 2020 WL 4883900, at *5) (alterations in original). Third, Plaintiff asserts Bartech's merits-based arguments and defenses—specifically arguments that Ward or the Straight Time Employees are exempt under the FLSA—are irrelevant at this stage of the proceedings. *Id.* at PageID.427-30. Fourth, courts regularly certify FLSA collective actions alleging straight time for overtime pay policies. *Id.* at PageID.430-31. Finally, Plaintiff again claims additional discovery confirms he and the Straight Time Employees are similarly situated. *Id.* at PageID.431-33.

In addition to conditionally certifying the class, Plaintiff asks this Court to order Bartech to provide his counsel with the names, current or last known addresses, email addresses, and telephone numbers for the Straight Time Employees and allow his counsel to disseminate notice via mail and email. *Id.* at

PageID.433.  He also asks the Court to authorize a 60-day notice period.[3]  *Id.* at

PageID.436.  Finally, Plaintiff requests permission to follow-up via telephone with

Straight Time Employees whose notice forms are returned as undeliverable.  *Id.* at

PageID.437.

Defendants oppose Plaintiff's Motion.  *See* ECF No. 44.  They argue

Plaintiff cannot demonstrate a common unlawful policy because (1) he does not

need to be a salaried employee to be exempt under the FLSA as long as he is paid a

guaranteed amount (on a salary-basis) and (2) it is not unlawful to pay straight time

for overtime to exempt employees.  *Id.* at PageID.1723-28.  Defendants contend

they are not arguing the merits because part of Plaintiff's "express burden in the

Sixth Circuit is to provide evidence that there is a common policy of broad

applicability that violates the FLSA."  *Id.* at 1728.

Additionally, Defendants assert Plaintiff's declaration is deficient because it

is conclusory and primarily relates to him instead of other workers.  *Id.* at

PageID.1731-32.  Similarly, Defendants claim Plaintiff's other evidence does "not

rebut or call into question Bartech's evidence that the workers, while hourly, were

paid a guarantee, that partial day deductions were not taken, and that lawful whole

---

[3] Plaintiff initially asked the Court to also authorize notice via text message, *id.* at PageID.433, and permit an identical reminder notice halfway through the opt-in period, *id.* at PageID.436.  However, Plaintiff's counsel agreed to withdraw these requests at the hearing.

day deductions were taken from the guarantee." *Id.* at 1733.  Defendants also

incorporate their objections from Plaintiff's first Motion to Certify Class and argue

the claims are subject to individualized defenses, specifically with respect to

whether the employees are exempt under the FLSA.  *Id.* at PageID.1734 (citing

ECF No. 20, PageID.180-83).  Finally, if the Court conditionally certifies the class

and authorizes notice, Defendants request the parties be required to consult and

submit a mutually acceptable notice.  *Id*.

### III.   LAW & ANALYSIS

### C. Legal Standard

Section 207 of the FLSA requires employers to compensate their employees

at "a rate not less than one and one-half times the regular rate" of pay for time

worked in excess of forty hours in any workweek.  29 U.S.C. § 207(a)(1).  The

FLSA's "collective action" provision, section 216(b), allows one or more

employees to bring an action for overtime compensation on "behalf of himself . . .

and other employees similarly situated."  29 U.S.C. § 216(b).  "Section 216(b)

establishes two requirements for a representative action: 1) the plaintiffs must

actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their

affirmative consent to participate in the action."  *Comer v. Wal-Mart Stores*, 454

F.3d 544, 546 (6th Cir. 2006).

District courts follow a two-phase process for certification to determine if opt-in plaintiffs and lead plaintiffs are similarly situated. *Williams, et al. v. K&K Assisted Living LLC, et al.*, No. 15- cv-11565, 2015 WL 7257274, at *2 (E.D. Mich. Nov. 17, 2015) (citing *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 825 (E.D. Mich. 2009)).  First, during the "notice" stage, the court determines whether to certify the suit as a collective action, which enables potential opt-in plaintiffs to be notified of, and participate in, the suit. *Id.* (citing *Fisher*, 665 F. Supp. 2d at 825).  Later, after the court has received all the opt-in forms and discovery has concluded, the second stage occurs wherein the court utilizes a stricter standard to judge whether class members are similarly situated. *Id.* (citing *Fisher*, 665 F. Supp. 2d at 825).

At the initial "notice" stage, the lead plaintiff "must show only that his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47.  Courts do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations at this initial stage. *Wlotkowski*, 267 F.R.D. at 217 (citation omitted).  "Rather, those tasks are addressed at the second stage." *Fisher*, 665 F. Supp. 2d at 826.

If the plaintiff can meet his burden, the court may authorize notification of similarly situated employees to allow them to opt into the suit. *Comer*, 454 F.3d at 546.  "The court may also order the defendant to provide plaintiffs with the contact

information of potential opt-in plaintiffs." *Williams*, 2015 WL 7257274, at \*3 (citing *Cobus v. DuHadway, Kendall & Associates, Inc.*, No. 13-cv-14940, 2014 WL 4181991, at \*2 (E.D. Mich. Aug. 21, 2014)).  If the court grants collective action certification at this stage, "the certification is conditional and by no means final." *Comer*, 454 F.3d at 546–47.

"At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Id.* at 547.  Using a more rigorous standard at the second stage,

> [d]istrict court[s] have based their final-certification decisions on a variety of factors, including the "factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action."

*Bacon v. Eaton Aeroquip, LLC*, No. 11-cv-14103, 2012 WL 65657603, at \*3 (citation omitted) (first alteration in original).

### D. Discussion

As stated above, Plaintiff seeks collective treatment for "Bartech employees who were paid straight time for overtime at any time during the past 3 years."  ECF No. 42, PageID.403.  He contends he presents sufficient evidence to demonstrate these workers are similarly situated.  *Id.* at PageID.417, PageID.431-33.  For the reasons below, the Court concludes Plaintiff has met his burden.

## 1. The Court Will Employ the Modest-Plus Standard

District courts in this Circuit typically apply the heightened "modest-plus" standard for conditional certification—rather than the "fairly lenient standard" generally employed during the "notice stage"[4]— when parties participate in related discovery. *Byers v. Care Transport, Inc.*, No. 13-cv-15174, 2016 WL 4771328, at *3 (E.D. Mich. Sept. 14, 2016) (collecting cases). "Under this 'modest-plus' standard, the court compares the allegations set forth in Plaintiff's Complaint with the factual record assembled through discovery to determine whether Plaintiffs have made a sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly-situated employees exists." *Id.* (citation omitted). At this juncture, the court determines whether the plaintiff has "advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs." *Id.* (citation omitted).

---

[4] The "fairly lenient" standard requires only that the plaintiff "submit evidence establishing at least a colorable basis for [his] claim that a class of 'similarly situated' plaintiffs exist." *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) (citation omitted). This similarity can be illustrated by a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* at 548 (citation and internal quotation marks omitted).

Other district courts within the Sixth Circuit have noted this standard does not require as stringent a showing as is required at the second stage of the certification process. *Weisgarber v. N. Am. Dental Grp., LLC*, No. 4:18cv2860, 2020 WL 1322843, at *2 (N.D. Ohio Mar. 20, 2020) (collecting cases).  When reviewing the presented evidence, the court should acknowledge that such evidence is "necessarily incomplete." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011) (citation omitted).  Moreover, the court's analysis should be "confined to evaluating whether the proposed class is 'similarly situated'" and should avoid analyzing the merits of the plaintiff's claims.  *Id.* (citations omitted).

Here, Defendants claim the "modest-plus" standard must apply because significant discovery has occurred, including two depositions noticed by Plaintiff and Defendant's production of almost 1500 pages of documents.  ECF No. 44, PageID.1712.  The Court notes it is not the discovery in and of itself that triggers the more stringent standard but discovery on the issue of conditional certification. *See Byers*, 2016 WL 4771328, at *3.  Regardless, Plaintiff effectively concedes the parties' additional discovery concerned conditional certification.  He filed his Renewed Motion to Certify Class because he alleges the new evidence confirms he and the Straight Time Workers are similarly situated.  ECF No. 42, PageID.417, PageID.431-33.  Because the parties have engaged in discovery related to

12

conditional certification, the Court will employ the "modest-plus" standard to assess Plaintiff's Motion.

### 2. The Court Finds Plaintiff and the Straight Time Workers are Similarly Situated

The FLSA authorizes workers to sue collectively on behalf of themselves and others "similarly situated" for violations of minimum wage and overtime protections of the FLSA.  29 U.S.C. § 216(b).  A lead plaintiff is considered "similarly situated," if his and the opt-in plaintiffs' "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct."  *Swinney v. Amcomm Telecomm., Inc.*, No. 12-12925, 2013 WL 4507919, at *3 (E.D. Mich. Aug. 23, 2013) (quoting *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir.2009)) (alteration in original).

As discussed above, under the "modest-plus" standard, the Court reviews this matter to determine whether Plaintiff has made a sufficient showing "to advance the ball down the field." *Byers*, 2016 WL 4771328, at *5 (citations omitted).  The Court's inquiry will focus on whether Plaintiff and the putative class of Straight Time Workers are similarly situated with respect to the allegation that Bartech's straight time for overtime practice violates the FLSA. *See Creely*, 789 F. Supp. 2d at 826.

When deciding Plaintiff's initial Motion for certification, the Court found "Plaintiff's sole declaration [wa]s insufficient to justify conditional class certification even under the lenient standard."  ECF No. 40, PageID.394. Specifically, the Court concluded Plaintiff had not provided "evidence of other workers" sufficient to establish a similarly situated class.  *Id.* at PageID.395 (alteration omitted).  While the Court found Plaintiff's pay stubs "demonstrate Bartech's straight time for overtime pay practice," these were insufficient support to demonstrate other workers were also subject to the practice.  *Id.* at PageID.397-98.  The Court determined addition of the singular line from Lipscomb's deposition that all NextEra associates who were paid straight time for overtime were treated the same was similarly deficient.  *Id.* at PageID.398.  Thus, the Court directed Plaintiff to proffer evidence the straight time for overtime practice applied more broadly than him.  *Id.* at PageID.396-97 ("While Plaintiff need not provide evidence from individuals who worked for every Bartech customer or at every location, he should proffer evidence to supplement his own allegations as a single employee.")

Instead of submitting additional declarations from other putative class members, Plaintiff relies on employment records he received in discovery.  These include a list of 324 employees assigned to Allegis/Frontier, Barpellam/ Delphi Tech, Barpellam/Detroit Edison, Barpellam/Navistar, Bartech/Eaton FG,

14

Bartech/Nationstar, Experis US/IBM, Guidant/Duke Energy, NextEra, Tapfin/Verizon, and Zero Chaos/Chrysler US whose "OT Status" is designated "Pay Over 40 at REG," ECF No. 42-1, and a sampling of their timesheets, which include "OT (Straight Time) / Hr" as one of the billable categories, ECF No. 42-2. Plaintiff also points to Nazario's and Lipscomb's depositions in which both Bartech employees confirm that multiple workers are paid straight time for overtime.  ECF No. 42-4, PageID.1640 ("Q. Bartech pays other workers straight time for overtime, correct? A. Yes."); ECF No. 42-5, PageID.1660 (confirming at least construction managers and project managers are generally paid straight time for overtime); *Id.* at PageID.1664-65 (stating Bartech treated all straight time for overtime workers staffed to NextEra the same).[5]

Upon careful review of the presented evidence under the "modest-plus" standard, the Court concludes Plaintiff has established he is similarly situated to the putative class of Straight Time Workers.  The Court already determined Plaintiff's pay stubs demonstrated the existence of Bartech's straight time for overtime pay practice.  ECF No. 40, PageID.397.  Now, the Court finds the list of employees and sampling of timesheets demonstrate the wide reach of this practice.

---

[5] Plaintiff also submits his offer letter, which indicates his "starting hourly wage [was] $67.00," ECF No. 42-6, PageID.1702, as well as his own timesheets, ECF No. 42-3.

At least 324 workers staffed at eleven different clients, including 290 at NextEra, were paid pursuant to the straight time for overtime policy.  ECF No. 42-1.

According to their timesheets, Plaintiff and these other workers regularly worked more than 40 hours in one week and were paid at the same rate as their base pay.  *See, e.g.*, 42-2; 42-3.  It appears the Straight Time Workers are similar in other ways as well.  As previously discussed, during his deposition, Lipscomb stated that Bartech treats all NextEra straight time for over time employees the same.  ECF 42-5, PageID.1664-65 (Q: "The workers, the associates that are paid straight time for overtime by Bartech that are staffed to NextEra are they all treated the same by Bartech? A: Yes.").  Moreover, Nazario specifically described practices that were common among workers.  For example, during her deposition, she confirmed the other Straight Time Employees are subject to the same exemption worksheet as, and receive a similar offer letter to, Plaintiff.  ECF No. 42-4, PageID.1640.  Thus, the Court determines there are similar allegations of facts amongst the Straight Time Employees, and Plaintiff "advance[s] the ball down the field."

Defendants assert in a footnote that other than the list of employees, Plaintiff's proffer relates exclusively to employees assigned to NextEra, and thus certification of a class of *all* workers paid straight time for overtime would be improper.  ECF No. 44, PageID.1733.  The Court finds this unpersuasive.

Defendants do not argue this list inaccurately identifies as Straight Time Employees workers who were paid pursuant to other policies.  Nor do Defendants have argue Straight Time Employees assigned to NextEra were treated differently than those assigned to other clients.  Instead, as discussed *infra*, Defendants contend the Putative Class Members are not similarly situated solely because they are exempt under the FLSA and thus were not subject to a common unlawful policy.  As discussed *infra*, this is a merits-based argument improperly raised at this stage.  *See Wlotkowski*, 267 F.R.D. at 217 (citation omitted).  Plaintiff has identified 34 Straight Time Employees from ten clients other than NextEra, therefore the Court will not limit the class to that client.

> ### i.    The Court Declines to Reach the Merits of Whether Plaintiff and the Straight Time Workers are Exempt under the FLSA

In opposition to Plaintiff's Renewed Motion to Certify Class, Defendants primarily argue Plaintiff has failed "to provide evidence that there is a common policy of broad applicability that violates the FLSA."  ECF No. 44, PageID.1728. Specifically, Bartech argues Plaintiff (and other Straight Time Employees) is exempt under the FLSA because he satisfies the salary-basis test even though his compensation is expressed in an hourly rate.  *Id.* at PageID.1723-25, PageID.1733. Thus, Defendants argue, "Ward's situation provides no evidence of a policy or practice to pay *non-exempt* employees straight time for overtime."  *Id.* at

PageID.1727 (emphasis in original).  According to Defendants, because Plaintiff is exempt it was perfectly legal under the FLSA to pay him using a straight time for overtime practice.  *Id.* at PageID.1727-28.  Defendants contend they are not prematurely arguing the merits because "[a]t this stage, courts consider factors such as . . . whether evidence of a widespread unlawful policy or plan has been submitted."  *Id.* at PageID.1728 (quoting *Anderson v. P.F. Chang's China Bistro, Inc.*, 2017 WL 3616475, *7 (E.D. Mich. August 23, 2017)).

As the Court already held in its April 23, 2021 Opinion and Order, it is not appropriate at the notice stage to determine whether Plaintiff or the other Straight Time Workers are exempt under the FLSA.  ECF No. 40, PageID.390 ("Upon review of the parties' briefs and the relevant case law, the Court agrees with Plaintiff and will accordingly decline to resolve the parties' dispute of Plaintiff's and the Straight Time Employees' employee status pursuant to the FLSA.").  *See Wlotkowski*, 267 F.R.D. at 219; *see also Graham v. Word Enterprises Perry, LLC*, No. 18- cv-10167, 2019 WL 2959169, at *5 (E.D. Mich. June 18, 2019).  Indeed, at the notice stage, "courts typically do not resolve factual disputes, *decide substantive issues going to the ultimate merits*, or make credibility determinations."  *Gallagher v. Gen. Motors Co.*, No. 19-11836, 2020 WL 3481649, at *3 (E.D. Mich. June 26, 2020) (emphasis added); *see also Weisgarber*,

2020 WL 1322843, at *2 (finding that a merits review is improper at the first stage even under a heightened standard of review).

Defendants aver they are not arguing the merits because the existence of an unlawful policy is a component of the analysis of whether Plaintiff and the putative class are similarly situated.  ECF No. 44, PageID.1722.  However, Plaintiff "need not prove whether the policy is lawful at [the 'modest-plus'] stage."  *Weisgarber*, 2020 WL 1322843, at *2; *see also O'Brien*, 575 F.3d at 584 (holding "a 'unified policy' of violations is not required" for conditional certification), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).  "It is sufficient for this stage that Plaintiffs have established a policy or practice and have advanced arguments that the policy violates the FLSA."  *Luster v. AWP, Inc.*, 2017 WL 3140697, at *2 (N.D. Ohio July 25, 2017).  Under the "modest-plus" standard, whether plaintiffs "demonstrated" an unlawful policy is "of no moment" because "it is not required."  *Weisgarber*, 2020 WL 1322843, at *4.

The Court acknowledges that some courts in the Sixth Circuit have declined conditional certification where the defendants disputed the legality of the policy or practice at issue.  Nevertheless, "numerous courts have conditionally certified cases where the defendant relied on the administrative exemption as a defense to FLSA liability."  *Wlotkowski*, 267 F.R.D. at 219 (collecting cases).  Indeed, in *Hicks v. Great Lakes Home Health Servs., Inc.*, No. 17-CV-12674, 2018 WL

4358918 (E.D. Mich. Sept. 13, 2018), one of the cases cited by Defendants for the proposition that "a plaintiff must offer sufficient evidence of an illegal policy or practice, ECF No. 44, PageID.1729, the court (Steeh, J.) ultimately granted conditional certification.  Despite finding the plaintiff "failed to show that [d]efendants had a nationwide comprehensive policy of paying home health workers on a hybrid basis and of refusing to compensate them for overtime," *Hicks*, 2018 WL 4358918, at *5, the court still granted conditional certification to a class of workers in the same type of job at the same location as the plaintiff based primarily on the plaintiff's declaration, *id.* at *7.

*Wheeler v. City of Detroit*, No. 11-CV-11455, 2012 WL 1119300 (E.D. Mich. Apr. 3, 2012) is also unpersuasive.  The alleged FLSA violation in that case was caused by defective hour-tracking software, not a defective policy.  The court (Borman, J.) held the defendant's use of its software did not, by itself, constitute a FLSA-violating policy.  *Id.* at *4.  Moreover, the defendant proffered evidence of a policy by which employees could redress shortfalls in their hourly pay, which the plaintiff had used, as well as evidence the defendant fixed the software after receiving complaints about its efficacy.  *Id.*  The plaintiff attempted to argue the defendant had violated the FLSA by failing to notify employees their pay may have been miscalculated by the software, but the court held nothing in the FLSA

prohibits employers from relying on its own payroll department, supervisors, or employees themselves to identify and report errors in paychecks. *Id.* at \*4-5.

Similarly, the alleged FLSA violation—an automatic meal break deduction—in *Cason v. Vibra Healthcare*, No. 10-10642, 2011 WL 1659381 (E.D. Mich. May 3, 2011) was also not inherently unlawful. After reviewing the record, the court (O'Meara, J.) determined the plaintiff had not made the modest showing necessary to demonstrate defendants placed the burden on defendants to correct the auto-deductions or otherwise permitted and/or demanded employees to work during unpaid meal periods. *Id.* at \*3. Instead, the defendants provided evidence that all their facilities had policies requiring non-exempt employees to inform management if they missed meal breaks so the automatic deduction could be canceled, and employees routinely utilized the policy. *Id.*

While the courts' analyses went to the merits of the plaintiffs' claim in both *Wheeler* and *Cason*, the Court notes that neither case asked the court to determine whether the employees were exempt under the FLSA. Instead, the software and policy at issue were facially lawful, and the defendants offered evidence to show their actions taken in accordance with the software and policy were also lawful. In contrast, here, Plaintiff has alleged Defendants' straight time for overtime pay practice is a violation of the FLSA, not just Defendants actions pursuant to that policy. Determining whether Plaintiff and the Straight Time Employees are

exempt under the FLSA is a "substantive issue[] going to the ultimate merits" of Plaintiff's claims. *Gallagher*, 2020 WL 3481649, at *3; *see also Weisgarber*, 2020 WL 1322843, at *2. This requires far more than was asked of the *Wheeler* and *Cason* courts, and this Court declines to go so far at this early stage.

### ii.    The Court Concludes the Parties Claims and Defenses Can Be Determined on a Class-Wide Basis

Defendants reincorporate by reference their arguments from their response to Plaintiff's previous Motion to Certify Class that "Ward's claims are subject to a variety of individualized defenses which defeat his motion." ECF No. 44, PageID.1734. Specifically, Bartech avers that, because it argues all the Straight Time Employees are exempt, the individualized inquiries would include whether each employee is paid on a salaried basis, whether Bartech took partial day deductions from each employee's salary, the factors listed in 29 C.F.R. § 541.603(a), whether the exemption for each employee is lost according to the standard in 29 C.F.R. § 541.603(b), and whether each employee satisfies the duties test for the exemption. ECF No. 20, PageID.181-83.

This Court "takes seriously the large number of factual determinations that would be necessary to a finding that any one individual was paid according to [Bartech's] straight time for overtime pay practice." *Smith*, 2020 WL 4883900, at *7. Nevertheless, Sixth Circuit precedent is clear that "individualized defenses alone do not warrant decertification [of a plaintiff class in an FLSA collective

action] where sufficient common issues or job traits otherwise permit collective litigation." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 404 (6th Cir. 2017).  Indeed, at this stage, the lead plaintiff "must show only that his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47.

Thus, the Court concludes it would be premature to deny conditional certification based solely on the prospective individualized defenses Bartech has identified. *Sutka v. Yazaki N. Am. Inc.*, No. 17-10669, 2018 WL 1255767, at *11 (E.D. Mich. Mar. 12, 2018).  As another court within this District explained, the process of carefully evaluating the opt-in class members "must occur at the second phase of class certification, after discovery is completed and all class members have opted in." *Aliah Larry v. Kelly Servs.*, Inc., 20-cv-11481, ECF No. 37, PageID.1087.

Additionally, the Court notes Bartech advances the *same* defense for *all* members of the putative class.  Specifically, Defendants aver all Straight Time Employees are exempt under the FLSA because they are paid on a salary basis. ECF 44 at PageID.1734; *see also* ECF 20 at PageID.181 ("Bartech only pays employees classified as exempt straight time for overtime").  Accordingly, courts in this Circuit have considered administrative exemption defenses collectively. *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-CV-000432, 2015 WL

4112312, at *5 (S.D. Ohio July 7, 2015) ("The evidence submitted by both parties in the form of affidavits, Offer Letters and time sheets demonstrates that the named Plaintiffs were paid under the same schematic framework, such that resolution of this inquiry would likely be possible as to the proposed class collectively.").

### 3.  The Court Declines to Approve Plaintiff's Proposed Notice

As a final matter, Plaintiff asks the Court to (1) approve his proposed Notice and Consent forms (ECF No. 18-4) and his email and phone scripts (ECF No. 18-5); (2) authorize his proposed notice methods; (3) order Bartech to produce each Straight Time Employee's contact information to Class counsel; and (4) authorize a 60-day opt-in period for Straight Time Employees to join the collective action.[6] ECF No. 42, PageID.416.

The Supreme Court has acknowledged that judicial notice to a putative class in FLSA collective actions is proper in "appropriate cases." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989).  "The district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546 (citing *Hoffmann-La Roche,* 493 U.S. at 169)).

Several courts in this District, including this Court, have described various reasons why judicial notice is appropriate in a FLSA collective action. *See, e.g., Williams*, 2015 WL 7257274, at *4 (citing *Fisher*, 665 F. Supp. at 828–29);

---

[6] *See* n. 3 *supra*.

*Wlotkowski*, 267 F.R.D. at 219.  First, "judicial notice protects … claims by informing similarly situated employees of the facts needed to make an informed decision whether to opt-in." *Fisher*, 665 F. Supp. at 829.  "Second, judicial notice promotes judicial economy, helps avoid the 'multiplicity of duplicative suits' inherent in these types of lawsuits, and notifies putative plaintiffs of an economically feasible litigation option." *Id.*  Third, judicial notice is also appropriate where the proposed notice uses language similar to other FLSA actions. *Id.*

Here, the parties dispute the content of the proposed Notice.  Bartech reincorporates its arguments from Plaintiff's initial motion for class certification and contends the proposed Notice "differs significantly in form and language from collective action notices commonly approved by courts." ECF No. 20, PageID.183.  Specifically, Bartech objected to Plaintiff's request for three means of delivery and a reminder notice halfway through the opt-in period. *Id*.

Plaintiff withdrew his request for notice via text message and reminder notice during the hearing, but the parties were not able to agree to the content and methods at that time.  Given the parties' continued dispute, the Court declines to approve Plaintiff's proposed Notice and Consent forms or authorize his notice methods at this time.  Instead, the Court orders the parties to meet and confer on an acceptable Notice and its methods.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY**

**ORDERED** that Plaintiff's Renewed Motion to Certify Class and Authorize

Notice (ECF No. 42) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the parties work together to draft a

mutually acceptable Notice to be sent to class members advising them of this

lawsuit and their opt-in/opt-out rights.  The parties should work together and

submit a proposed Order for such purpose.  The proposed Notice shall be

submitted to the Court for approval within one week of the issuance of this

Opinion and Order.  If the parties are unable to come to an agreement, each side

will submit their proposed Notice to the Court.  Once the Court approves a Notice,

it will issue an order directing issuance of the notice to class members.

**IT IS SO ORDERED.**


s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  December 10, 2021

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 10, 2021, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager